**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**CASE NO.: 1:25-cv-04103**

WELLNESS INC.,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

        Defendants.

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff WELLNESS INC.[1] ("WELLNESS" or "Plaintiff"), by and through its

undersigned counsel, brings this Complaint against Defendants, the individuals, partnerships, and

unincorporated associations set forth on Schedule "A" hereto[2] (collectively "Defendants"), who

are promoting, selling, offering for sale and distributing goods bearing counterfeits and

confusingly similar imitations of Plaintiff's intellectual property within this district through

various Internet based e-commerce stores using the seller identities as set forth on Schedule "A"

hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

**SUMMARY OF THE ACTION**

---

[1] Since it is unknown when Plaintiff's forthcoming Ex Parte Motion for Entry of Temporary Restraining Order,
Including a Temporary Injunction, an Order Restraining Transfer of Assets, a Temporary Asset Restraint, Expedited
Discovery, and Service of Process by Email will be ruled on, Plaintiff's name has been removed to prevent Defendants
from getting advanced notice. Copyright piracy and infringement lawsuits like this one are closely monitored by
Chinese defendants on websites like www.sellerdefense.cn, social media (QQ, WeChat, etc.), and elsewhere on the
internet. The www.sellerdefense.cn website and others warn infringers specifically of product types, brands, law firms
filing cases, and other information necessary for defendants, like those named in this case, to evade Plaintiff's anti-
pirating and anti-counterfeiting efforts and hide their ill-gotten gains. Plaintiff will file under seal an Unredacted
Complaint which identifies Plaintiff and provides additional information and allegations once the record is unsealed.
[2] Schedule "A" to this Complaint will be filed under seal after this Honorable Court rules on Plaintiff's forthcoming
Motion to for Leave to File Certain Documents Under Seal and to Temporarily Proceed Under a Pseudonym.

1.      Plaintiff brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), Illinois' Uniform Deceptive Trade Practices Act (815 ILCS § 510, *et seq.*).

2.      Plaintiff brings this action for willful copyright infringement committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq.*, and The All Writs Act, 28 U.S.C. § 1651(a).

## SUBJECT MATTER JURISDICTION

3.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 301.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Illinois and this district, through at least the internet-based e-commerce stores accessible in Illinois and operating under their Seller IDs.

7.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Illinois cause plaintiff injury in Illinois, and Plaintiff's

claims arise out of those activities.

8.      Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction and not residents in the United States and therefore there is no district in which an action may otherwise be brought.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1400(a) because Defendants or their agents are subject to the Court's personal jurisdiction and therefore reside in this judicial district or may be found here.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1400(b) because Defendants or their agents reside in this judicial district or have committed acts of infringement and have a regular and established place of business in this judicial district.

## THE PLAINTIFF

13.     WELLNESS is a [REDACTED] with its principal place of business in [REDACTED].

14.     WELLNESS is the maker of [REDACTED], an [REDACTED].

15.     WELLNESS's products are sold through [REDACTED],  online through its

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

website [REDACTED] and other authorized retailers.

16.     WELLNESS owns the trademarks and copyrights described below that are the subject of this action in the United States.

17.     Plaintiff offers for sale and sells its products within the state of Illinois, including this district, and throughout the United States.

18.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

19.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

20.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

21.     The explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brands.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A.      PLAINTIFF'S TRADEMARK RIGHTS

22.     Plaintiff created and sells [REDACTED] under the federally registered trademarks [REDACTED] and [REDACTED] (collectively the "WELLNESS Marks"). WELLNESS is a [REDACTED].

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

23.     Plaintiff is the owner of all rights in and to the WELLNESS Marks [REDACTED] and [REDACTED] ([REDACTED]) for [REDACTED] in International Class [REDACTED] and International Class [REDACTED] shown in the table below.

[REDACTED]

24.     The WELLNESS Marks are valid and registered on the Principal Register of the United States Trademark Office and shown in Composite Exhibit 1[3].

25.     The WELLNESS Mark is incontestable.

26.     The WELLNESS Marks are used in connection with the manufacture and distribution of Plaintiff's [REDACTED].

27.     The WELLNESS Marks are displayed on the top of Plaintiff's products and on the top of the packaging used for selling the products. Shown below are the WELLNESS Marks as they are used in relation with Plaintiff's products and its packaging.

[REDACTED]

[REDACTED]

28.     The WELLNESS Marks have been used in interstate commerce to identify and distinguish Plaintiff's [REDACTED].

29.     The WELLNESS Marks have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

30.     The WELLNESS Marks have never been assigned or licensed to any of the Defendants.

31.     The WELLNESS Marks are symbols of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

32.     Plaintiff has carefully monitored and policed the use of the WELLNESS Marks.

[3] Exhibit 1 is omitted in initial filing. Plaintiff will attach the Exhibit 1 to the Unredacted Complaint.

33.     The WELLNESS Marks are well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and have been for many years.

34.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the WELLNESS Marks in connection with [REDACTED]. [REDACTED] average marketing and promotional investments are around $9 million per year.

35.     Plaintiff has extensively used, advertised, and promoted the WELLNESS Marks in the United States in association with the sale of [REDACTED].

36.     Plaintiff has spent substantial resources promoting the WELLNESS Marks and [REDACTED] bearing or sold under those marks.

37.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the WELLNESS Marks as being [REDACTED].

38.     Accordingly, the WELLNESS Marks have achieved secondary meaning as identifiers of [REDACTED].

39.     Genuine [REDACTED] bearing or sold under the WELLNESS Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

40.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

41.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

42.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and

legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the WELLNESS Marks.

### B.    PLAINTIFF'S COPYRIGHT RIGHTS

43.    Plaintiff advertises, markets, promotes, and sells its products under WELLNESS Marks using photographs that are protected by copyright and registered with the Copyright Office (collectively the "Copyrighted Works").

44.    Plaintiff's photographs are duly registered with the Register of Copyrights as visual materials as shown in the table below. True and correct copies of the Certificates of Registration and the photographs they apply to are attached hereto as Composite Exhibit 2[4].

[REDACTED]

45.    The Copyrighted Works show Plaintiff's [REDACTED], their packaging, and their use by different people.

46.    [REDACTED] bearing or sold under the WELLNESS Marks are widely legitimately advertised and promoted by Plaintiff and its authorized distributors using Plaintiff's Copyrighted Works.

47.    Plaintiff has never granted authorization to anyone to advertise, market, or promote unauthorized goods using Plaintiff's Copyrighted Works.

### DEFENDANTS

48.    Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

49.    Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions,

---

[4] Exhibit 2 is omitted in initial filing. Plaintiff will attach the Exhibit 2 to the Unredacted Complaint.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

50.     Defendants are engaged in business in Illinois but have not appointed an agent for service of process.

51.     Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

52.     Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

53.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

54.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

55.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Illinois through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

56.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or

sell during the registration or maintenance process related to their respective Seller IDs.

57.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

58.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

59.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

60.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

61.     Some of the Defendants use individual seller store names containing the WELLNESS Marks, and these store names are indexed on search engines and compete directly with Plaintiff for space in search results.

62.     The appearance of Defendants' individual seller stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under the WELLNESS Marks.

63.     Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

64.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Illinois and causing Plaintiff harm and damage within this jurisdiction.

65.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

66.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER

67.     Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto.

68.     Defendants are promoting, selling, offering for sale and distributing goods bearing identical or confusingly similar imitations of Plaintiff's intellectual property within this district.

69.     Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Defendants will arise in the action.

70.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

71.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiffs, Defendants, and this Court.

72.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

73.     Joinder of the multiple Defendants listed in Schedule "A" is procedural only and does not affect the substantive rights of any defendant listed on Schedule "A" hereto.

74.     This Court has jurisdiction over the multiple Defendants listed in Schedule "A" hereto. Venue is proper in this court for this dispute involving the multiple Defendants listed in Schedule "A" hereto.

75.     Plaintiff's claim against the multiple Defendants listed in Schedule "A" are all transactionally related.

76.     Plaintiff is claiming counterfeiting and infringement of Plaintiff's licensed intellectual property rights by Defendants.

77.     The actions of all Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar counterfeiting and infringing conduct when each is compared to the others.

78.     All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions.

79.     All Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal activities.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

80.     All Defendants are located in foreign jurisdictions, mostly China.

81.     All Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal counterfeiting and infringing activities.

82.     All Defendants have the same or closely related sources for their counterfeit and infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain counterfeit and infringing products from the same upstream sources.

83.     All Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiff's licensed intellectual property rights with impunity.

84.     All Defendants have registered their Seller IDs with a small number of online platforms for the purpose of engaging in counterfeiting and infringement.

85.     All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

86.     All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their illegal activities.

87.     All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event their efforts are discovered or Plaintiff obtains a monetary award.

88.     All Defendants violated one or more of the Plaintiff's licensed intellectual property rights in the United States, by the use of common or identical methods.

89.     All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

90.     Many of the Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs listed on Schedule "A". As a result, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

91.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement scheme and cause harm to Plaintiff.

92.     Defendants are using infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

93.     Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Illinois and causing Plaintiff harm and damage within this jurisdiction.

94.     The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiffs' licensed intellectual property rights and the destruction of the legitimate market sector in which it operates.

95.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**DEFENDANTS' INFRINGING ACTIVITIES**

96.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's [REDACTED] in interstate commerce that are counterfeits and

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

97. Specifically, Defendants are using one or more of the WELLNESS Marks to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

98. Defendants are using identical copies of one or more of the WELLNESS Marks for different quality goods.

99. Plaintiff has used the WELLNESS Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

100. Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods.

101. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the [REDACTED] offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the WELLNESS Marks.

102. The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.

103. Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

104. In so advertising their stores and products, Defendants improperly and unlawfully use the WELLNESS Marks and the Copyrighted Works without Plaintiff's permission.

105. As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the WELLNESS Marks and the Copyrighted Works. Specifically, Defendants are using counterfeits and infringements of one or more of the WELLNESS Marks in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

106. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

107. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the WELLNESS Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

108. Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

109. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

110. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the WELLNESS Marks and the Copyrighted Works, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

111. Defendants' use of one or more of the WELLNESS Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

112. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

113. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

114. Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

115. Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

116. Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores or seller identification names being used and/or controlled by them.

117. Defendants are likely to transfer or secret their assets to avoid payment of any

16

monetary judgment awarded to Plaintiff.

118.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights.

119.     If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

120.      The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

121.     Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

122.     Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's trademarks and copyrights.

123.     Plaintiff has no adequate remedy at law.

### COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

124.     Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of one or more of the WELLNESS Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

126.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of

the WELLNESS Marks.

127.     Defendants are continuously infringing and inducing others to infringe one or more of the WELLNESS Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

128.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

129.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

130.     Defendants' above-described illegal actions constitute counterfeiting and infringement of one or more of the WELLNESS Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

131.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

132.     If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

### COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

133.     Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

134.     Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of one or more of the WELLNESS Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

135. Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the WELLNESS Marks are virtually identical in appearance to Plaintiff's genuine goods.

136. Defendants' Counterfeit Goods are different in quality from Plaintiff's goods, and are of much lower quality.

137. Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

138. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress and Plaintiff's own photographs, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

139. Defendants have authorized infringing uses of one or more of the WELLNESS Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

140. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

141. Defendants are using counterfeits and infringements of one or more of the WELLNESS Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

142.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

143.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

144.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (815 ILCS § 510, et seq.)

145.     Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

146.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion as to the source of their goods, causing a likelihood of confusion as to an affiliation, connection, or association with genuine Plaintiff's products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion among the public.

147.     The foregoing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

148.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

149.    Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

150.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing or sold under one or more of the WELLNESS Marks.

151.    Plaintiff is the owner of all common law rights in and to the WELLNESS Marks.

152.    Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of one or more of the WELLNESS Marks.

153.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing or sold under one of more of the WELLNESS Marks.

154.    Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT V – COPYRIGHT INFRINGEMENT

155.     Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

156.     Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

157.    Pursuant to 17 U.S.C. § 411 (a), Plaintiff registered its copyrights for its photographs.

158.    Defendants directly infringed Plaintiff's exclusive rights in its Copyrighted Worksunder 17 U.S.C. § 106.

159.    Defendants copied, displayed, and distributed Plaintiff's Copyrighted Works and/or prepared derivative works based upon Plaintiff's Copyrighted Works in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

160.    Defendants' conduct constitutes willful and direct copyright infringement of Plaintiff's Copyrighted Works.

161.    Defendants profited from the direct infringement of the exclusive rights of Plaintiff in the Works at issue in this case under the Copyright Act.

162.    Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

163.    On information and belief, there is a business practice of infringement by Defendants.

164.    Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

165.    Plaintiff has been damaged by the infringement.

166.    The harm to Plaintiff is irreparable.

167.    Plaintiff is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

168.    Plaintiff is entitled to recover its actual damages and/or statutory damages, at its election.

169.    Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against defendants as follows:

a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C §§ 502 and 503, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the WELLNESS Marks; from using the WELLNESS Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the WELLNESS Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely

23

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff; from copying, displaying, distributing or creating derivative works of Plaintiff's Copyrighted Works.

b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the WELLNESS Marks, that copy, display, distribute or use derivative works of Plaintiff's Copyrighted Works.

c.     Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. §503.

d.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the WELLNESS Marks.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

e.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this

Court's inherent authority that, upon Plaintiff's request, any messaging service

and Internet marketplace website operators, administrators, registrar and/or top

level domain (TLD) registry for the Seller IDs who are provided with notice of an

injunction issued by this Court identify any e-mail address known to be associated

with Defendants' respective Seller IDs.

f.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this

Court's inherent authority that upon Plaintiff's request, any Internet marketplace

website operators and/or administrators who are provided with notice of an

injunction issued by this Court permanently remove from the multiple platforms,

which include, *inter alia*, a direct platform, group platform, seller product

management platform, vendor product management platform, and brand registry

platform, any and all listings and associated images of goods bearing counterfeits

and/or infringements of the WELLNESS Marks via the e-commerce stores

operating under the Seller IDs, including but not limited to the listings and

associated images identified by the "parent" and/or "child" Amazon Standard

Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon

Plaintiff's request, any other listings and images of goods bearing counterfeits

and/or infringements of the WELLNESS Marks associated with any ASIN linked

to the same sellers or linked to any other alias seller identification names being

used and/or controlled by Defendants to promote, offer for sale and/or sell goods

bearing and/or using counterfeits and/or infringements of the WELLNESS Marks.

g.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing the WELLNESS Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

h.    Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

i.    Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

j.    Entry of an Order requiring Defendant to account to and pay Plaintiff for all profits and damages resulting from Defendant's copyright infringement, or statutory damages (at Plaintiff's election), for all infringements involved in the action, with respect to any one work, for which Defendant is liable in a sum of not

less than $750 or more than $30,000 as the Court considers just pursuant to 17

U.S.C. §504(c)(1), or to the extent the Court finds that infringement was

committed willfully, an award of statutory damages to a sum of not more than

$150,000 per violation, pursuant to 17 U.S.C. §504(c)(2).

Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b), as well as 17 U.S.C.

§ 504 of Plaintiff's costs and reasonable attorneys' fees and

investigative fees associated with bringing this action, including the cost of

corrective advertising.

k.      Entry of an Order that, upon Plaintiff's request, Defendants and any financial

institutions, payment processors, banks, escrow services, money transmitters, or

marketplace platforms, and their related companies and affiliates, identify and

restrain all funds, up to and including the total amount of judgment, in all

financial accounts and/or sub-accounts used in connection with the Seller IDs, or

other alias seller identification or e-commerce store names used by Defendants

presently or in the future, as well as any other related accounts of the same

customer(s) and any other accounts which transfer funds into the same financial

institution account(s) and remain restrained until such funds are surrendered to

Plaintiff in partial satisfaction of the monetary judgment entered herein.

l.      Entry of an award of pre-judgment interest on the judgment amount.

m.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: April 15, 2025                    Respectfully submitted,

                                         */s/ Joel B. Rothman*
                                         JOEL B. ROTHMAN
                                         Florida Bar Number: 98220
                                         joel.rothman@sriplaw.com
                                         LAYLA T. NGUYEN
                                                27
                                         **SRIPLAW**
                     CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Florida Bar Number: 1024723
Layla.nguyen@sriplaw.com
J. CAMPBELL MILLER
Illinois Bar Number: 6345233
campbell.miller@sriplaw.com

**SRIPLAW, P.A.**
742 S. Rangeline Rd.
Carmel, IN 46032
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Wellness Inc.*